SHEPPARD. In re. See Cases Nos. 12,753 and 12,754.

SPEPPARD (HOWE v.). See Cases Nos. 6,-772 and 6,773.

## Case No. 12,757.
### SHEPPARD et al. v. PHILADELPHIA BUTCHERS' ICE CO

[3 Wkly. Notes Cas. 565.]

District Court, E. D. Pennsylvania. March 16, 1877.

ADMIRALTY JURISDICTION—DEMURRAGE—DAMAGES FOR DETENTION—MEASURE OF DAMAGES.

[1. An admiralty court has jurisdiction of a libel to recover damages in the nature of demurrage, although there is no stipulation for demurrage in the bill of lading.]

[2. While demurrage eo nomine is never payable unless expressly stipulated, yet damages for detention in the nature of demurrage may be recovered.]

[3. A libel for damages in the nature of demurrage is properly filed in the name of the shipowner, and the authority of the master to use the owner's name will be implied.]

[4. The consignee is not liable, merely as such, for damages for detention, where no demurrage or lay days are mentioned in the bill of lading, but if he is the owner of the cargo, he is liable for any unreasonable delay.]

[5. Under a libel to recover damages in the nature of demurrage, where demurrage is not provided for, the burden is upon the consignee, being the owner of the cargo, to prove that the detention was reasonable.]

[6. In such case the measure of damages is the gross freight which the vessel would have earned under ordinary circumstances from the time when she ought to have been discharged to the time when discharge was actually completed.]

Sheppard and others, owners of the schooner Curtis Tilton and other vessels, filed several libels against the Butchers' Ice Company for damage in the nature of demurrage caused, as was alleged, by the neglect of the company to unload their vessels promptly. The cargoes had been shipped in Maine, consigned to the ice company, as owners, at Philadelphia. The bills of lading stipulated for the delivery of the ice to the company at the Christian street wharf, on the river Schuylkill in said city, the consignee to pay freight. No demurrage clause was inserted. The libels alleged that the Curtis Tilton arrived at Philadelphia on May 29. 1876, at Christian street wharf, with her cargo aboard; that the company accepted the cargo and commenced to receive the ice, but detained the vessel till the 15th day of June, by reason of which the libelants suffered damages, etc. The answer alleged that there was no improper delay in unloading; that when libelants' vessel arrived, there were other vessels occupying the wharf, which compelled the libelants' vessels to await their turn, which they did, and that the masters well knew, when they shipped the cargo, that this would probably be the case; that there was no liability on the part of respondents because the bill of lading stipulated only for the payment of freight and nothing more.

At the hearing of the cause, on January 12. 1877, THE COURT (CADWALADER, District Judge) said:

In these cases the impression of the court, after the reading of the papers and proof, is that the respective libelants are entitled to decrees in their favor. But, if so, it will be necessary to ascertain the damages in every case by a commissioner. Therefore, Edward F. Pugh, Esq., is commissioned to inquire and report what damages, in every one of the cases, ought to be assessed if the libelant is entitled to recover, and to report specifically any proposition of law or fact which may be material on the question of the right to recover.

On February 23. 1877, the commissioner reported as follows:

"1. The actions were properly brought in the court of admiralty; no authorities requiring them to be brought at law.

"2. While it is true that demurrage, eo nomine. is never payable, unless expressly stipulated (Robertson v. Bethune, 3 Johns. 342); yet damages for detention, in the nature of demurrage, may be recovered (Horn v. Bensusna, 9 Car. & P. 709).

"3. The libels were properly filed in the names of the owners of the vessels, and not in those of the masters (Evans v. Forster, 1 Barn. & Adol. 118; Brouncker v. Scott, 4 Taunt. 1); but the authority of the master to use the owners' names will be implied.

"4. When the bill of lading has in it a demurrage clause, the consignee, accepting the cargo, is responsible for the payment of the demurrage, according to the terms of the bill of lading; or, if the charter party stipulates for demurrage, and the stipulation is referred to in the bill of lading, he is responsible (Jesson v. Solly, 4 Taunt. 52; Wegener v. Smith. 28 Eng. Law & Eq. 356; Falkenburg v. Clark, 16 Am. Law Reg. [N. S.] 90); even if he had no actual notice of the arrival of the vessel (Harman v. Clarke, 4 Camp. 159). But he is not liable for demurrage. eo nomine. if the bill of lading contain no provision for its payment. even if he accept the cargo. Gage v. Morse, 12 Allen. 410. See, also, Young v. Moeller, 5 El. & Bl. 755; Chappel v. Comfort, 10 C. B. (N. S.) 802. Nor is he liable when the delay was not from his own default. Smith v. Siereking, 30 Eng. Law & Eq. 382. affirmed 5 El. & Bl. 589; Rodgers v. Forresters, 2 Camp. 483. The consignee, merely as such, is not liable for damages for detention. where no demurrage or lay days are mentioned or referred to in the bill of lading. Abb. Shipp. 221; Sprague v. West [Case No. 13,255]; Gage v. Morse, 12 Allen. 410; Donaldson v. McDowell [Case No. 3,985]. But. when the consignee is the owner of the cargo, there is an implied agreement that he will provide for its discharge within a reasonable time. and he must explain delay. Cross v. Beard. 26 N. Y. 85. Especially if he be in reality, though not in name. the freighter. Sprague v. West, supra; Donaldson v. McDowell [supra]; The Hyperion [Case No. 6,987]; Clendaniel v. Tuckerman. 17 Barb. 190; Cross v. Beard, 26 N. Y. 85; The Woodbine. 1 Law T. (N. S.) 200; Falkenburg v. Clark, 16 Am. Law Reg. (N. S.) 90. The burden of proof that the detention was reasonable lies upon the respondents. and. being the real freighters and owners, and having detained the vessels a longer time than was reasonable. they should be held responsible.

"5. The proper measure of damages is the gross freight which the vessels would have earned. under ordinary circumstances and in their usual course of employment. from the time when they ought to have been discharged to the time when the discharge was actually completed. deducting the amount

which would have been expended in earning the freight. The Narragansett [Case No. 10,020]; Sprague v. West [supra]; Vantine v. The Lake [Case No. 16,878]; Swift v. Brownell [Id. 13,695]; Williamson v. Barrett. 13 How. [54 U. S.] 110; Jolly v. Terre Haute Bridge Co. [Case No. 7,441]; The Cayuga [Id. 2,535]; The Corier Maratimo. 1 C. Rob. Adm. 287; The Gazelle. 2 W. Rob. Adm. 279; Talbot v. Janson, 3 Dall. [3 U. S.] 133; The Apollon, 9 Wheat. [22 U. S.] 363.

"In the present cases. where the crews were discharged, the wages which would have been paid them and the amount of their board are deducted. In all the cases, the port charges and the amounts which would have been paid for discharging a cargo are also deducted. Subject to these deductions, the libelants are allowed the gross freight which they would have earned in the carriage of a cargo of coal from Philadelphia to Boston, that being their usual employment."

To this report the respondents filed exceptions.

H. B. Freeman, for exceptants.

H. R. Edmunds, contra.

THE COURT (CADWALADER, District Judge). Exceptions dismissed. and decree for libelants according to the above report.